117 T.C. No. 3

UNITED STATES TAX COURT

STEPHEN T. FAN AND LANDA C. FAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17036-99.                          Filed July 24, 2001.

In 1995, P purchased an intraoral camera system
(the system) for use in his dental practice.  The
system has general applicability and usefulness to all
dental patients.  It reduces the time necessary for a
dentist to explain diagnoses, "procedures", and
recommended treatment with patients.  P considered the
system to be a more effective and efficient way to
communicate with hearing-impaired patients.  On their
1995 Federal income tax return, Ps claimed a disabled
access credit for the cost of the system.  See sec. 44,
I.R.C.  R determined that the system was not an
"eligible access expenditure" for purposes of sec.
44(c), I.R.C., and disallowed the credit.

Held: Because the system was not acquired by
petitioner in order for him to comply with the
applicable requirements of the ADA, the system is not
an "eligible access expenditure" for purposes of sec.
44(c), I.R.C.

Jon R. Vaught, for petitioners.

H. Clifton Bonney, Jr., for respondent.

OPINION

DAWSON, Judge:  This case was assigned to Special Trial Judge Lewis R. Carluzzo pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

CARLUZZO, Special Trial Judge:  Respondent determined deficiencies of $2,111 and $1,114 in petitioners' Federal income taxes for 1995 and 1996, respectively.  The issue for decision is whether petitioners are entitled to a disabled access credit under section 44 for either year in issue.[2]

Background

Some of the facts have been stipulated and are so found. Petitioners are husband and wife.  At the time that the petition was filed, they resided in Fremont, California.  References to petitioner are to Stephen T. Fan.

Petitioner is and was at all relevant times, a self-employed dentist.  During 1995, he employed fewer than 30 individuals in

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The 1996 deficiency results from the disallowance of the portion of sec. 44 credit generated in 1995 and carried over into 1996.

connection with his dental practice, which generated less than $1 million in gross receipts for that year.

On December 28, 1995, petitioner purchased and placed in service in his dental practice an ULTRACAM Cart System with Cart and two PR-LWB 314AW Wall Mounts (intraoral camera system or system) for $8,995 and $166, respectively. The intraoral camera system consists of the several components, including: (1) An imaging system that includes a small, wand-shaped video camera and a wall-mounted monitor; and (2) educational information, including printed materials and video presentations, for patient usage.

The video camera is designed to be inserted into a patient's mouth so that a magnified image of the inside of the patient's mouth can be displayed on the wall-mounted monitor. In this manner, the patient can see what the dentist sees during the examination and therefore, theoretically, better understand the nature of any problem uncovered by the examination and the treatment recommended by the dentist. Images displayed on the monitor can be printed for further review by, or consultation between, the patient and the dentist.

After the examination is completed and treatment recommended, a patient can review the educational information included with the system. The patient can select video presentations addressing periodontal diseases, root canals,

temporal mandibular disorders, implants, etc., as well as the proposed treatment for these and other conditions.

According to promotional materials, the system provides images that "facilitate fast, accurate analysis and diagnosis" of dental conditions. Furthermore, according to the promotional materials, the system "reduces the time necessary to explain diagnoses and procedures and describe courses of treatment with patients". The system has general applicability and usefulness to all patients. The promotional materials do not suggest that the system was designed specifically to facilitate the treatment of disabled individuals.

Some of petitioner's patients are hearing impaired.[3] Prior to purchasing the system, petitioner communicated with his hearing-impaired patients primarily through the use of handwritten notes. He also provided educational video tapes that his patients could view through the use of a VCR and television set. None of his hearing-impaired patients complained to petitioner about this method of communication. Nevertheless, petitioner found communicating in this manner to be cumbersome and time consuming. According to petitioner, the use of handwritten notes generally added about 20 minutes to an examination. Furthermore, after each examination, the pens,

_____

[3] When questioned on cross-examination, petitioner refused to disclose the number of hearing-impaired patients that he treated during the years in issue.

pencils, and notepads had to be disinfected or disposed of due to health requirements.  Petitioner also found use of the VCR and television to be inconvenient because the equipment had to be brought into and removed from the examination room during the examination.

Prior to purchasing the system, petitioner did not refuse treatment to a prospective patient because the patient had a hearing impairment.  He did not purchase the system at the suggestion or recommendation of one of his hearing-impaired patients, and during the years in issue he did not limit the use of the system to his hearing-impaired patients.  Nevertheless, when compared to handwritten notes, he considers the system to be a more effective and efficient way to communicate with his hearing-impaired patients.  When used in the examination of a hearing-impaired patient, the system, in some instances, reduced the need for petitioner to communicate with the patient by handwritten notes.  Petitioner further found that if he used the system during the examination of a hearing-impaired patient, the patient was more likely to understand and agree to any recommended treatment.  According to promotional materials, "studies show case acceptance increases by approximately 30 percent with an intraoral camera system."

Petitioners filed a timely 1995 Federal income tax return. On a Form 8826, Disabled Access Credit, included with that

return, they reported a $4,879 current year disabled access credit attributable to the purchase of the system. After taking into account applicable limitations, the current year disabled access credit resulted in a claimed general business credit of $2,969. See sec. 38. The balance of the 1995 credit ($1,910) was treated as a carryforward general business credit on a Form 3800, General Business Credit, included with petitioners' 1996 Federal income tax return. Taking into account applicable limitations, they claimed a general business credit of $1,114 for that year, all of which is attributable to the purchase of the system in 1995.

In the notice of deficiency, respondent disallowed the disabled access credit for 1995 and the associated carryforward to 1996; instead respondent treated the entire cost of the intraoral camera system as a deductible business expense under section 179. According to the explanation contained in the notice of deficiency, the disabled access credits attributable to the system were disallowed because the system "does not permit patients to be treated who were excluded from services before the purchase of the camera."

## Discussion

Subject to various limitations, an eligible small business is entitled to a disabled access credit for eligible access expenditures for the taxable year. Sec. 44. The parties agree

that petitioner qualifies as an "eligible small business" for the years in issue, sec. 44(b); their disagreement focuses on whether the cost of the system qualifies as an "eligible access expenditure", sec. 44(c).

To qualify as an eligible access expenditure within the meaning of section 44, the expenditure must be "paid or incurred by an eligible small business for the purpose of enabling such eligible small business to comply with applicable requirements under the Americans With Disabilities Act of 1990" (ADA).  Sec. 44(c)(1).

Congress enacted the ADA to establish a clear and comprehensive Federal prohibition of discrimination on the basis of disability in the areas of:  (1) Employment in the private sector; (2) public services; (3) public accommodations; (4) transportation; and (5) telecommunications.  H. Rept. 101-485 (II) at 28 (1990); see also 42 U.S.C. sec. 12101(b).  The ADA is divided into five titles that coincide with the above-mentioned areas.  42 U.S.C. sec. 12101.  Petitioner's dental office is a place of public accommodation within the meaning of the ADA.  42 U.S.C. sec. 12181(7)(F); United States v. Morvant, 898 F. Supp. 1157, 1161 (E.D. La. 1995).  Consequently, we focus our attention on Title III of the ADA.  42 U.S.C. secs. 12181-12189.

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. sec. 12182(a). Relevant for our purposes, Title III specifically defines discrimination to include a failure to take necessary steps to ensure that no individual with a disability is denied services because of the absence of auxiliary aids and services. 42 U.S.C. sec. 12182(b)(2)(A)(iii). The term "auxiliary aids and services" includes:

> (A) qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments;
> (B) qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments;
> (C) acquisition or modification of equipment or devices; and
> (D) other similar services and actions.

42 U.S.C. sec. 12102(1).

The preamble to the final regulations implementing the ADA states that the auxiliary aid requirement is a flexible one. 28 C.F.R. sec. 36.303, Appendix B (2000). "A public accommodation can choose among various alternatives as long as the result is effective communication." Id. The final regulations implementing the ADA include examples of auxiliary aids and services required to be furnished to ensure effective communication. 28 C.F.R. sec. 36.303(b). With respect to

individuals with hearing impairments, the examples given include:

> Qualified interpreters, notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments.

28 C.F.R. sec. 36.303(b)(1).

The ADA requires businesses to ensure effective communication through the use of auxiliary aids and services. Costs associated with complying with this requirement are "eligible access expenditures" for purposes of the disabled access credit.  Sec. 44(c)(2).  Petitioner argues that the purchase of the system enables his business to meet this requirement with respect to hearing-impaired individuals and, therefore, the cost of the system qualifies as an eligible access expenditure.  For the following reasons, we disagree.

At the outset, we note that petitioner was already in compliance with the ADA at the time that he purchased the system. Petitioner did not discriminate against, or refuse to treat, hearing impaired individuals "on the basis of disability".  42 U.S.C. sec. 12182(a).  Nor did he fail to take necessary steps to ensure that no individual with a disability is denied services because of the absence of auxiliary aids and services.  See 42 U.S.C. sec. 12182(b)(2)(A)(iii).  He effectively communicated

with his hearing-impaired patients through the use of handwritten notes, which is an acceptable "auxiliary aid" or service under the ADA.

More importantly, the system is not a replacement for, or acceptable alternative to, handwritten notes for purposes of the section 44 credit. The system itself was not designed or marketed as a communication device for hearing-impaired individuals, and petitioner did not limit the use of the system to his hearing-impaired patients. We accept his claim that, by permitting a patient to view a video image of a particular dental condition, the system might have allowed a patient to better understand the nature of his or her dental condition and the recommended treatment, but it does not eliminate the need for the dentist and the patient to communicate with each other. See 28 C.F.R. sec. 36.303, Appendix B (2000) (noting that communications involving areas such as health, legal matters, and finances may require the use of notes or interpreters, or an effective alternative such as the use of a computer terminal upon which the customer can exchange typewritten messages). As a result, we fail to see how the system constitutes an effective method "of making aurally delivered materials available to individuals with hearing impairments". 42 U.S.C. sec. 12102(1)(A); see also sec. 44(c)(2)(B); 28 C.F.R. sec. 36.303(b)(1).

It is our view that petitioner did not purchase the system, in lieu of using handwritten notes, so as to be in compliance with the ADA. Section 44 was enacted as part of the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11611(a), 104 Stat. 1388-501, and is intended to complement the ADA by providing "relief to small businesses making the accommodations required by the ADA." 136 Cong. Rec. S12852 (daily ed. Sept. 12, 1990) (statement by Senator Kohl). The legislative history indicates that the Congress was concerned that the requirements contained in the ADA may impose a severe financial burden on certain small businesses. See H. Conf. Rept. 101-964, at 1138-1140 (1990). To alleviate the burden, the Congress provided small businesses with a tax credit for a portion of the costs incurred in complying with the ADA. See id. If the expenditure was not made to enable compliance with the ADA, then the expenditure does not qualify for credit under section 44.

In this case, petitioner's acquisition of the system did not enable him to comply with the ADA--he was already in compliance with the ADA through the use of handwritten notes to communicate with his hearing-impaired patients. Furthermore, the system is not a replacement or substitute for the use of handwritten notes. It follows that cost of the system is not an eligible access expenditure within the meaning of section 44(c), and,

consequently, the system does not qualify for the disabled access credit.  Respondent's determination in this regard is therefore sustained.[4]

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.

---

[4] Respondent also argues that the purchase of the intraoral camera system was an unreasonable and unnecessary expenditure for the purpose of making aurally delivered materials available to hearing-impaired patients.  Sec. 44(c)(3).  Because we have determined that the system is not an "eligible access expenditure", we do not address this issue.