T.C. Memo. 2003-245

UNITED STATES TAX COURT

DAVID B. HUBBARD AND JANIS HUBBARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1764-02.              Filed August 14, 2003.

David B. Hubbard and Janis Hubbard, pro sese.

<u>Alan J. Tomsic</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax for 1997 in the amount of $5,814.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether the cost of certain equipment purchased by petitioner for use in his optometric practice qualifies under section 44 for the "disabled access" Federal income tax credit.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Reno, Nevada.  Hereinafter, references to petitioner in the singular are to petitioner David Hubbard.

From 1977 through 2000, petitioner, was an optometrist and owned and operated his own optometric practice in Winnemucca, Nevada.  During those 23 years, the only optometric practice located in a three-county area (namely, Humboldt County, Pershing County, and Lander County, Nevada), was petitioner's.  The optometric practice located closest to petitioner's practice was in Elko, Nevada, approximately 120 miles from Winnemucca.

As an optometrist, petitioner diagnosed and treated certain eye diseases, tested vision problems, prescribed corrective lenses, and sold eyeglasses and contact lenses.

Generally, prior to 1997, to test the vision of his patients and to prescribe corrective lenses, petitioner determined his patients' "refractive error" by performing subjective refractions

using a manual refractor. To perform subjective refractions, petitioner would have his patients sit in an examination chair behind a manual refractor, view various charts through lenses in the manual refractor, and answer a series of questions that petitioner would ask them. Subjective refractions of patients would take approximately 5 to 10 minutes each.

On disabled patients, however, petitioner occasionally was not able to perform subjective refractions. For example, some mentally handicapped patients and hearing impaired patients were unable to understand and answer questions asked during subjective refractions, and some physically disabled patients could not be moved from their wheelchairs into petitioner's examination chair behind the manual refractor.

Although petitioner and hearing impaired patients could write notes to each other during subjective refractions, it was difficult for hearing impaired patients to look through the manual refractor while reading notes from and writing notes to petitioner, thereby affecting the accuracy of the subjective refractions.

Prior to 1997, as a result of the above difficulties in diagnosis, petitioner was not able to treat a number of disabled patients, and petitioner referred those disabled patients to other optometrists located in distant communities. In 1996, due to petitioner's inability to treat them, approximately 30

disabled patients were referred by petitioner to other optometrists.

In 1997, in order to increase petitioner's ability to treat disabled patients, petitioner purchased for $12,950 a Humphrey Instruments automatic refractor/keratometer (automatic refractor).

Also in 1997, petitioner purchased for $4,495 a Rush Ophthalmics height-adjustable rotary instrument stand on which to place the automatic refractor. This rotary instrument stand made the automatic refractor accessible to wheelchair patients.

Using the automatic refractor and the rotary instrument stand together petitioner was able to perform "objective" refractions on all of his patients in order to test their vision and in order to prescribe corrective lenses without the patients having to be seated in an examination chair behind a manual refractor and without having to engage in a series of written questions and answers.

While the patients look into the automatic refractor, the refractor shines a light into the patients' eyes, takes measurements, and prints out copies of the patients' prescriptions. Using the automatic refractor and the rotary instrument stand, objective refractions on petitioner's patients took about 10 to 15 seconds.

Using the automatic refractor, petitioner was able to test the vision of some disabled patients whom petitioner would not have been able to test using a manual refractor.

In 1997, petitioner's optometric practice realized gross receipts of $586,649.

Petitioners timely filed their 1997 joint Federal income tax return, with a Form 8826, Disabled Access Credit, on which petitioners claimed under section 44 a disabled access tax credit in the amount of $5,000 relating to petitioner's costs of purchasing the automatic refractor and the rotary instrument stand.

In a notice of deficiency, respondent disallowed petitioners' claimed $5,000 disabled access tax credit.

OPINION

The Americans With Disabilities Act of 1990 (ADA), Pub. L. 101-336, sec. 302(a), 104 Stat. 355, codified at 42 U.S.C. sec. 12182(a) (2000), prohibits discrimination against disabled individuals in the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations by any "place of public accommodation".

For purposes of ADA, professional offices of health care providers, such as petitioner's optometric practice, are included within the definition of places of public accommodation. 42 U.S.C. sec. 12181(7)(F) (2000).

With regard particularly to disabled individuals, ADA regulations provide as follows:

> A health care provider may refer an individual with a disability to another [health care] provider, if that individual is seeking, or requires, treatment or services outside of the referring provider's area of specialization, and if the referring provider would make a similar referral for an individual without a disability who seeks or requires the same treatment or services.  A physician who specializes in treating only a particular condition <u>cannot</u> <u>refuse</u> <u>to</u> <u>treat</u> <u>an</u> <u>individual</u> <u>with</u> <u>a</u> <u>disability</u> for that condition * * *.  [28 C.F.R. sec. 36.302(b)(2) (2002); emphasis added.]

In order to comply with the above general ADA prohibition of discrimination against individuals with disabilities, places of public accommodation such as petitioner's optometric practice are required to make reasonable modifications to their facilities and procedures that are necessary in order to provide services to individuals with disabilities.  42 U.S.C. sec. 12182(b)(2)(A)(ii); 28 C.F.R. sec. 36.302(a) (2002).

Places of public accommodation are required to remove any physical barriers including communication barriers that are structural in nature, where such removal is "readily achievable".  42 U.S.C. sec. 12182(b)(2)(A)(iv); 28 C.F.R. sec. 36.304(a) (2002).  "Readily achievable" is defined by ADA as being "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. sec. 12181(9) (2000).  Factors to be considered include the following:

> (1)  The nature and cost of the action to be taken;
>
> (2)  The financial resources of the place of public accommodation, and the effect of the action on its expenses and resources; and
>
> (3)  The type of operations of the place of public accommodation, and the impact of the action on its operations.  Id.

Cases discussing ADA sec. 302, 104 Stat. 355, 42 U.S.C. sec. 12182(b)(2)(A)(ii), make it clear that determining whether expenditures and modifications by service providers would be reasonable constitutes a fact and case specific test.  As explained in Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995):

> the determination of whether a particular modification is "reasonable" involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it. [Citations omitted.]

Section 44(a) provides "eligible small businesses" with a Federal income tax credit equal to 50 percent of "eligible access expenditures" exceeding $250 and up to $10,250 (with a maximum credit of $5,000) which enable the businesses to comply with ADA.

"Eligible small businesses" are defined as businesses with gross receipts less than $1 million or with less than 30

employees (and which elect to be treated as such by filing a Form 8826).  Sec. 44(b).

"Eligible access expenditures" are defined as amounts paid or incurred by eligible small businesses for the purpose of complying with ADA, including the following:  (1) Expenditures to remove architectural, communication, physical, or transportation barriers preventing the business from being accessible to, or usable by, individuals with disabilities; and (2) expenditures to acquire or modify equipment for use by or to benefit individuals with disabilities.  Sec. 44(c)(2)(A), (D).  Also, to qualify as eligible access expenditures the expenditures must be reasonable and necessary.  Sec. 44(c)(3).

In Fan v. Commissioner, 117 T.C. 32, 34-35, 37 (2001), a disabled access tax credit claimed by a dentist relating to the cost of an intraoral camera system was disallowed.  The intraoral camera system included a wand-shaped oral camera that could be inserted inside patients' mouths, a monitor, and educational videotapes, all of which enabled patients to watch the dentist perform dental work and to watch videos that explained various diagnoses and treatments.  Id. at 34.

In Fan, because, prior to purchasing the intraoral camera system, the dentist was already in compliance with ADA through

the use of handwritten notes to communicate with hearing impaired patients and because the dentist had always been able to treat disabled patients, we disallowed the claimed disabled access credit. Id. at 37-39. We also noted that the intraoral camera system had a general applicability and usefulness to all of the dentist's patients. Id. at 34.

Relying on Fan, respondent argues that prior to purchasing the automatic refractor and the instrument stand at issue in this case petitioner already was in compliance with ADA and that because the automatic refractor and instrument stand had general applicability and usefulness in treating all of petitioner's patients, petitioner should not be entitled to the section 44 disabled access tax credit relating to the cost of purchasing the equipment. Respondent also alleges that the automatic refractor and the instrument stand did not represent reasonable and necessary expenses of petitioner's optometric practice.

Petitioner argues that because the automatic refractor and the instrument stand enabled him to provide vision testing to disabled patients for whom petitioner previously had not been able to provide treatment and whom petitioner previously had referred elsewhere, petitioner's purchase of the automatic refractor and the instrument stand enabled petitioner to comply with the requirements of ADA, and he should be entitled to the section 44 disabled access tax credit with respect to the total

$17,445 cost of the equipment, subject to the annual credit limit of $5,000.

In distinction to the facts involved in Fan v. Commissioner, supra, prior to purchasing the automatic refractor and the instrument stand, petitioner herein was not able to provide vision testing services to some disabled patients. Petitioner's testimony was credible on this point. During 1997, petitioner's optometric practice was the only optometric practice located in a three-county area in Nevada.

The fact that the automatic refractor was also used by petitioner to treat nondisabled patients is not fatal to petitioner's entitlement to the disabled access tax credit. We find no exclusive use or benefit test in section 44(a). Certainly, a wheelchair ramp into a restaurant for disabled access will be used by nondisabled customers of the restaurant, and nothing in section 44 or the regulations would deprive the restaurant owner of the disabled access tax credit with regard thereto. See 28 C.F.R. sec. 36.304(b)(1) (2002).

We conclude that petitioner purchased the automatic refractor and the instrument stand in order to treat disabled patients and to comply with ADA's prohibition of discrimination against disabled individuals. We also conclude -- in light of the size of petitioner's practice compared to the cost of the equipment, the benefit to his practice, and the benefit to the

community -- that petitioner's purchase of the automatic refractor and of the instrument stand was reasonable and necessary. Petitioner's costs of the equipment constitute eligible access expenditures. See sec. 44(c); 42 U.S.C. sec. 12182(a) and (b)(2)(A)(iii).

Petitioners are entitled to the claimed $5,000 section 44 disabled access tax credit.

Based on the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.