# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No.  98-1648

_____

| | | |
|---|---|---|
| Joseph Baldwin Campbell, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United |
| Commissioner of Internal Revenue, | * | States Tax Court. |
| | * | |
| Appellee. | * | |
| | * | |
| | * | |

_____

Submitted:  December 16, 1998
Filed:  January 8, 1999

_____

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MURPHY, Circuit Judge.

Joseph Baldwin Campbell appeals from a decision of the United States Tax Court[1] finding a deficiency of $8,512 on his 1992 federal income tax obligations, as well as additions due under 26 U.S.C. §§ 6651(a)(1), 6651(a)(2), and 6654.  Campbell, an enrolled member of the Prairie Island Indian Community, contends that the court erred in concluding that the per capita distribution of tribal casino proceeds he received

_____

[1]The Honorable D. Irvin Couvillion presiding.

in 1992 was taxable as ordinary income and that certain unreimbursed travel expenses were not adequately substantiated. The Commissioner of Internal Revenue supports the court's rulings on these issues but points out that no additional tax is due under 26 U.S.C. § 6651(a)(2) because that section does not apply. We affirm the judgment except for the $681 penalty imposed under § 6651(a)(2) and remand for deduction of that amount from the total due.

## I.

Campbell received an assignment from the Prairie Island Indian Community in 1982 which granted him the right to occupy and use a 270 acre plot of reservation land. He lived on the land, grew various agricultural crops, and installed some irrigation equipment. Campbell agreed to relinquish 10 acres in 1983 so the Community could build a bingo hall and casino, and the parties entered into a second agreement in 1987. The Community agreed to lease to Campbell through December 31, 1996 the same 270 acres, minus some 10 acres "presently occupied by a bingo hall and parking lot." The lease limited the parties' rights to sublease, assign, or amend the lease; it also provided that it would be binding only after approval by the Secretary of the Interior. The lease was to terminate on all or part of the land, and Campbell would be entitled to no compensation, if the Community were to notify him before January 1 of any year that it would need the land for economic development the following summer. This lease was approved by the Minneapolis Area Director of the Bureau of Indian Affairs.

On December 30, 1991, the tribal council informed Campbell that the entire 270 acre tract would be required for community economic development and advised him to cease all farming operations. Campbell questioned the validity of the council's action and protested its decision to bulldoze his two trailer homes, but he did not act to remove all of his belongings. Some of his possessions were lost when the trailers were removed, including records of his travel expenses.

Campbell's claims against the tribe eventually went to arbitration. Campbell sought a new land assignment and compensation for the destruction of his property and lost farming income. He has at this point received some compensation from the tribe, but the matters have apparently not yet been finally resolved.

Campbell's tax status was also affected. From 1982 through 1991, the income he received from farming was not taxable by the federal government. See Squire v. Capoeman, 351 U.S. 1 (1956) (recognizing tax exemption for income derived directly from land held in trust for an Indian allottee). Campbell ceased earning income from farming when the Community converted the land use to economic development, but he and other tribal members received a distribution from casino earnings. In 1992, the individual distribution amounted to $43,380 for each tribal member living on the reservation. The tribe reports such per capita distributions to the Internal Revenue Service (IRS) on Forms 1099-DIV, and they are normally taxable under 25 U.S.C. § 2710(b)(3)(D). Campbell did not report his portion as income, however.

Campbell did not file a tax return for 1992, and he received a notice of deficiency from the Commissioner for that year. The IRS indicated that he owed $8,512 in federal income tax based on his receipt of the $43,380 dividend, $1,951 in non-employee compensation from the tribal council, and $98 in interest income. The IRS acknowledged that he was entitled to a self-employment tax deduction of $138, a standard deduction of $3600, and a $2300 deduction for one exemption, but it also notified him that he owed additions to his tax. These additions were based on failure to file a timely return ($1,915 due under § 6651(a)(1)), failure timely to pay tax shown as due ($681 due under § 6651(a)(2)), and failure to pay estimated tax ($374 due under § 6654(a)). Campbell ultimately filed a tax return for 1992 showing the income and deductions figured by the IRS and an additional $1756 deduction for a business loss arising from unreimbursed travel expenses. Although he listed the tribal dividend on the return, Campbell continued to maintain that it was not taxable.

Campbell filed a case in the United States Tax Court to challenge the Commissioner's determinations. He claimed that the dividend was exempt from federal taxation because it was derived from Indian land to which he had a valid lease and because it was a substitute for farming income from that land. The parties entered into a stipulation which resolved many of the issues, but two remained for trial. The remaining issues were whether the $43,380 dividend was taxable and whether Campbell could deduct as a business loss $1756 in unreimbursed travel expenses related to his activities as a member of the tribe's environmental protection council. The tax court ruled for the Commissioner on both issues.

## II.

Campbell argues that the tax court erred both in deciding that the dividend was regular taxable income and in determining that he was not entitled to deduct his travel expenses. Decisions of the United States Tax Court are reviewed on the same basis as decisions from a civil trial before a federal district court. Black Hills Corp. v. Commissioner, 73 F.3d 799 (8th Cir. 1996). The tax court's findings of fact are reviewed for clear error and its legal conclusions are reviewed de novo. Broadaway v. Commissioner, 111 F.3d 593, 595 (8th Cir. 1997); Jacobson v. Commissioner, 963 F.2d 218, 219 (8th Cir. 1992). A taxpayer bears the burden of proving that a determination made by the Commissioner was erroneous. Welch v. Helvering, 290 U.S. 111 (1933).

Campbell asserts that the $43,380 dividend is not taxable because it was received in lieu of non-taxable income from farming tribal land. He argues that he should be able to offset his lost farming income from the per capita payments. He contends that because he had a lease giving him the right to farm the land on which the casino stands and because he was prevented from exercising this right, his per capita share of casino profits represents income received in lieu of farming. The Commissioner responds that the income was not in fact received in lieu of farming, that

even income received in lieu of farming is not tax exempt, and that Campbell did not have a valid lease to the land in 1992.

Tribal members are required to pay federal taxes absent an express exemption, Squire v. Capoeman, and the Indian Gaming Regulatory Act explicitly provides that per capita distributions of income from tribal casinos are subject to federal taxation. 25 U.S.C. § 2710 (b)(3)(D). Campbell has not presented any evidence of a special agreement designating the $43,380 he received in 1992 as anything other than the per capita distribution of casino proceeds made to all tribal members living on the reservation. He has not shown that the dividend was received in lieu of farming income, and Campbell's prior farming activities do not change the character of this distribution. The tax court correctly determined that the dividend was taxable as ordinary income.

Campbell also challenges the determination that he had not provided adequate documentation to deduct certain unreimbursed travel expenses. He argues that he should not be required to meet the strict documentation standards of 26 U.S.C. § 274(d) because his records were lost when his house was bulldozed. The Commissioner responds that § 274(d) applies, and that Campbell neither provided a reasonable reconstruction of his expenses nor established that the expenses were not reimbursable.

Unreimbursed expenses incurred by an employee may be deductible under § 162(a), Primuth v. Commissioner, 54 T.C. 374, 377 (1970), but travel expenses cannot be deducted unless the substantiation requirements of 26 U.S.C. § 274(d) are met. Langer v. Commissioner, 980 F.2d 1198 (8th Cir. 1992). Section 274(d) requires the taxpayer to substantiate the amount, time, place, and business purpose of each travel expense, "by adequate records or by sufficient evidence corroborating the taxpayer's own statement." 26 U.S.C. § 274(d). When a taxpayer has lost records for reasons beyond his control "such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by a reasonable reconstruction

of his expenditures." Treas. Reg. § 1.274-5(c)(5). In order to take advantage of this exception, a taxpayer must prove that he had records which would have adequately substantiated his or her expenses and that those records were destroyed or lost in a casualty "beyond the taxpayer's control." Treas. Reg. § 1.274-5(c)(5).

The loss of records in connection with a move is not a casualty beyond the taxpayer's control unless there are extenuating circumstances. See, e.g., Gizzi v. Commissioner, 65 T.C. 342 (1975); see also Olivares v. Commissioner, 47 T.C.M. (CCH) 165 (1983) (exemption does not apply when taxpayer had significant notice that possessions would be removed). Some lower courts have held that in extreme circumstances the loss of records caused by an abrupt eviction is sufficient to invoke this exception. See Murray v. Commissioner, 41 T.C.M. (CCH) 337 (1980). Campbell's situation was not so extreme, however. He had received notice of the council plans to destroy his trailers and had an opportunity to remove his belongings. The fact that he may not have believed the council would act as it did is not sufficient to make his eviction a casualty beyond his control. The court did not err in its application of the § 274(d) requirements and in determining that the summary of expenses Campbell submitted did not satisfy those requirements.

III.

For the reasons already discussed, the judgment of the tax court is affirmed with the exception of the inclusion of a penalty under § 6651(a)(2). Although the court's memorandum opinion noted that § 6651(a)(2) did not apply to Campbell and that it was "mistakenly included in the notice of deficiency," its final decision apparently overlooked the need to deduct the $681 originally sought by the Commissioner under this section. The case is therefore remanded to the tax court for modification of the judgment to correct this oversight.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.