United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 7, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 05-61129

EDWARD R. AREVALO,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

Appeal from the Decision
of the United States Tax Court

Before WIENER and CLEMENT, Circuit Judges, and MARTINEZ, District Judge.[*]

EDITH BROWN CLEMENT, Circuit Judge:

In this *pro se* appeal from the United States Tax Court, Edward Arevalo challenges the Tax Court's determination that he was not allowed either a depreciation deduction under 26 U.S.C. § 167 or a tax credit under 26 U.S.C. § 44. Finding no error, we affirm.

## I. FACTS AND PROCEEDINGS

In 2001, Arevalo participated in a telephone investment program promoted by Alpha Telecom, Inc., which solicited numerous individuals to invest in payphones, allegedly modified with features like longer cords and volume control, that could be used by persons with disabilities. It represented that the modifications rendered the phones compliant with the Americans with Disabilities

---

[*]District Judge of the Western District of Texas, sitting by designation.

- 1 -

Act ("ADA"). Alpha Telecom also represented that the investor could reap two tax benefits: (1) the phones, as depreciable property, would entitle investors to depreciation deductions under Internal Revenue Code ("I.R.C.") § 167, 26 U.S.C. § 167, and (2) the costs incurred towards compliance with the ADA would qualify the investor for a disabled access tax credit under I.R.C. § 44, 26 U.S.C. § 44.

Arevalo entered into a purchase agreement with Alpha Telecom whereby it agreed to sell two payphones to Arevalo for $5,000 each. The contract did not provide for locations of the payphones or any other identifying information regarding the phones. The agreement did state that the phones were approved for installation in accordance with the ADA but did not list what the modifications were or how much the modifications cost. The agreement also contained a buy-back election, valid for seven years, which Arevalo signed. Under this provision, Arevalo could sell a phone back to Alpha Telecom and be refunded the entire $5,000, unless Arevalo executed this option during the first three years, in which case a ten percent restocking fee would apply. The buy-back provision also gave Alpha Telecom the right of first refusal if Arevalo wished to sell the phones to a third party.

Arevalo simultaneously entered into a service agreement with Alpha Telecom for the operation and maintenance of the phones. Arevalo had the option of contracting with a third-party service company but, like most of Alpha Telecom's investors, opted to use Alpha Telecom as the service provider. Arevalo further opted for "Level Four" service, the highest level, enabling him to leave operation and maintenance of the phones solely to Alpha Telecom. *See SEC v. Rubera*, 350 F.3d 1084, 1087 (9th Cir. 2003) (noting that "90 percent of investors selected Level Four" in their service agreements with Alpha Telecom). Under this agreement, Alpha Telecom assumed many responsibilities, including installation of the phones at the location of its choice, negotiation of the site

agreement, the collection of money, the payment of insurance and utility bills, and the completion of any regulatory certifications.

In exchange for operation and maintenance of the phones, Alpha Telecom was to receive seventy percent of the revenue generated by the phones. Arevalo was to receive the balance. If the phones did not generate a certain threshold of revenue, then Alpha Telecom would nonetheless pay Arevalo $58.34 per month. If the phones did not generate at least that sum, then Arevalo would receive the entirety of the revenue that was generated.

Alpha Telecom operated at a loss and eventually filed for bankruptcy. Arevalo filed a proof of claim. Shortly thereafter, the bankruptcy case was dismissed in order for the case to proceed in federal district court in Oregon. The Securities and Exchange Commission ("SEC") brought an enforcement action against Alpha Telecom alleging that the payphone scheme was a security and that the company had failed to register with the SEC. A receivership was appointed to take over operations of the company. The district court determined that the payphone scheme was a security, and, in 2003, the Ninth Circuit affirmed. *See Rubera*, 350 F.3d at 1097.

On his 2001 federal income tax form, Arevalo claimed both a depreciation deduction and a disabled access credit. Arevalo was audited, and the Commissioner determined that Arevalo was not entitled to claim either the deduction or the credit and that Arevalo had a tax deficiency. Arevalo challenged the deficiency in Tax Court, but he did not appear for trial. Relying on stipulated facts and joint exhibits submitted by the parties, the Tax Court found in the Commissioner's favor. Arevalo appealed.

## II. STANDARD OF REVIEW

We apply the same standard of review to decisions of the Tax Court that we apply to district

court decisions. *Park v. Comm'r*, 25 F.3d 1289, 1291 (5th Cir. 1994). Findings of fact are reviewed for clear error and issues of law are reviewed de novo. *Id.* (citing *McKnight v. Comm'r*, 7 F.3d 447, 450 (5th Cir. 1993)).

### III. DISCUSSION

We note at the outset that the Sixth Circuit has recently addressed the same issues presented to this court in a published opinion in *Crooks v. Commissioner.* 453 F.3d 653 (6th Cir. 2006). In *Crooks*, the petitioners, who were also investors in the Alpha Telecom payphone scheme, argued that they were entitled to a depreciation deduction and a tax credit. *Id.* at 655. The court held that the Tax Court properly concluded that the petitioners were not entitled to a depreciation deduction or a tax credit associated with the scheme. *Id.* at 656–57. We agree with the Sixth Circuit's analysis and conclusions with respect to both issues.

### A. Depreciation Deduction

Section 167 of the I.R.C. provides for a depreciation deduction "for the exhaustion, wear and tear . . . (1) of property used in the trade or business, or (2) of property held for the production of income." 26 U.S.C. § 167(a). The issue is whether, for the purpose of being entitled to a depreciation deduction, Arevalo owned the payphones. In the context of a sale, when determining the ownership of an asset for tax purposes, courts look at many different factors indicative of ownership, not just the passage of bare legal title. *Upham v. Comm'r*, 923 F.2d 1328, 1334 (8th Cir. 1991) (citing *Bailey v. Comm'r*, 912 F.2d 44, 47 (2d Cir. 1990)); *see also Crooks*, 453 F.3d at 656 (discussing and applying the *Upham* factors). Among the factors are:

> (1) Whether legal title passes; (2) the manner in which the parties treat the transaction; (3) whether the purchaser acquired any equity in the property; (4) whether the purchaser has any control over the property and, if so, the extent of such

> control; (5) whether the purchaser bears the risk of loss or damage to the property; and (6) whether the purchaser will receive any benefit from the operation and disposition of the property.

*Upham*, 923 F.2d at 1334 (quoting *Houchins v. Comm'r*, 79 T.C. 570, 591 (1982)). Additionally, "where the transferor continues to retain significant control over the property transferred, the transfer of formal legal title will not operate to shift the incidence of taxation attributable to ownership of the property." *Id*. (citing *Bailey*, 912 F.2d at 47; *Durkin v. Comm'r*, 872 F.2d 1271, 1275 (7th Cir. 1989); *Tolwinsky v. Comm'r*, 86 T.C. 1009, 1041 (1986); *Law v. Comm'r*, 86 T.C. 1065, 1094 (1986)). Stated another way, if the benefits and burdens of ownership have not passed from the seller to the purchaser, then courts will disregard the transfer of formal legal title when determining ownership of an asset for tax purposes. *Bailey*, 912 F.2d at 47. The Supreme Court has repeatedly stressed that, in examining transactions for the purpose of determining their tax consequences, substance governs over form. *See Frank Lyon Co. v. United States*, 435 U.S. 561, 572–73 (1978) (discussing the substance over form doctrine and referencing a number of cases where it has been applied).

Whether Arevalo had ownership of the payphones entitling him to a depreciation deduction is a factual issue that we review for clear error. *Upham*, 923 F.2d at 1334. The Tax Court listed eight reasons for its conclusion that the benefits and burdens of ownership had not shifted from Alpha Telecom to Arevalo in the act of sale. Among them, the Tax Court noted that Arevalo had no control over the phones, he never took possession of them, he did not know where they were located nor have identification information for them, and he did not have the authority to enter into any site agreements. Arevalo also bore almost no risk of loss; due to the buy-back election, Arevalo could sell the phones back to Alpha Telecom for their full value, minus a restocking fee if the election was

made in the first three years.  Alpha Telecom was additionally responsible for all maintenance of the phones.  As a result, despite Arevalo's legal title to the phones, the Tax Court found that, for the purpose of being entitled to a depreciation deduction, Arevalo did not own the phones.

On appeal, Arevalo argues that he assumed the benefits and burdens of ownership.  He points out, *inter alia*, that he did control the phones, since he had the right to sell them and he had to pay for repairs that were not part of the service contract.  He maintains that he did bear the risk of loss because he lost all of the money when the company went bankrupt.  Notwithstanding his arguments, we agree with the analysis of the Tax Court.  Taxpayers bear the burden of proving their entitlement to deductions.  *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (citing *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943)).  Arevalo has not shown that he maintained substantial control over the payphones.  *See Upham*, 923 F.2d at 1334.  The purchase and service agreements indicate that Alpha Telecom was responsible for the installation, location selection, operation and maintenance of the phones.  The company also retained the greatest potential for profit and bore the risk of loss if the phones did not generate sufficient revenue because Arevalo was guaranteed to be paid at least the lower of $58.34 or the entire revenue for the phone every month.  *See Crooks*, 453 F.3d at 656 (concluding that, based on the *Upham* factors, the Tax Court properly declined to permit the depreciation deduction).  We conclude that the finding of the Tax Court is not clearly erroneous.

**B.  Tax Credit**

Section 44 of the I.R.C. provides that an "eligible small business" may take a disabled access credit for "eligible access expenditures."  26 U.S.C. § 44(a).  An eligible access expenditure is defined generally as an amount paid or incurred for the purpose of compliance with the ADA.  *Id.* § 44(c)(1).  The statute provides that the amount must be reasonable and includes expenditures for modifying

equipment. *Id.* § 44(c)(2)(d), (c)(3). The ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In order to claim a disabled access credit, a taxpayer must show that he has made an eligible access expenditure. 26 U.S.C. § 44(c); *see also Crooks*, 453 F.3d at 656 (noting that the I.R.C. permits a tax credit "if the business made expenditures to enable it to comply with the" ADA); *Galyen v. Comm'r*, 91 T.C.M. (CCH) 762, at *4 (U.S. Tax Ct. Feb. 22, 2006).

 Before the Tax Court, the parties stipulated that Arevalo was not provided with a list of the modifications allegedly made to the phones or the costs of the modifications. It was a salesperson who represented to Arevalo that the phones were modified by adjusting the cord length and installing volume controls. There is also no record evidence of the location of the phones or whether they were in fact leased to a place of public accommodation. Arevalo lacks essential information in support of his case and has not shown that he made an eligible access expenditure.

 Further, even if we assumed that the phones were located at places that qualified as "public accommodations" under the ADA, we agree with the Tax Court's conclusion that Arevalo was not entitled to a disabled access credit because he did not have any obligation to comply with the ADA. *See Crooks*, 453 F.3d at 657 (noting that "the appellants were not violating the ADA before they purchased the phones, so purchasing them did not enable the appellants to become ADA-compliant"). The Tax Court reasoned that because Arevalo did not own the phones, he did not own anything that would require him to comply with the ADA.

 We observe that, consistent with this reasoning, it was Alpha Telecom, not Arevalo, who had

- 7 -

the duty to comply with the ADA because Alpha Telecom was responsible for all decisions related to the phones, including their lease to a place of public accommodation. *See id.* at 657 (noting that "the appellants did not have a duty to be compliant with" the ADA). We hold that the Tax Court correctly concluded that Arevalo did not have an obligation to comply with the ADA and his investment in the payphones did not qualify as an eligible access expenditure.

We also note that the SEC's conclusion that interests like Arevalo's are securities is not necessarily determinative of the tax nature of such investments, but it is consistent with the Tax Court's conclusions regarding ownership of the pay phones for tax purposes and for ADA compliance responsibility as well.

## IV. CONCLUSION

Finding no error, we AFFIRM.