T.C. Memo. 2007-363

UNITED STATES TAX COURT

JOSEPH M. AND MARJORIE SITA, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10068-05.                    Filed December 10, 2007.

Joseph M. Sita, pro se.

<u>Trent D. Usitalo</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes for 2001 and 2002 (years at
issue) of $3,121 and $2,100.[1]

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and Rule references are to
the Tax Court Rules of Practice and Procedure.  Amounts are
(continued...)

After concessions,[2] the issues for decision are: (1) Whether petitioners are entitled to a depreciation deduction of $2,143 under section 167 for 2001; (2) whether petitioners are entitled to a disabled access credit under section 44 for 2001; and (3) whether petitioners are entitled to a business expense deduction of $14,000 under section 162 for 2002.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in New Richmond, Wisconsin, when they filed their petition.

A.    Procedural History

This case, commenced on June 1, 2005, was previously continued because of the pendency of related litigation in two U.S. Courts of Appeals (referred to herein as the Alpha Telcom cases). See Arevalo v. Commissioner, 469 F.3d 436 (5th Cir. 2006), affg. 124 T.C. 244 (2005); Crooks v. Commissioner, 453 F.3d 653 (6th Cir. 2006). The Alpha Telcom cases are concluded, and the decisions entered in those cases are final. In each case, the Tax Court sustained the Commissioner's deficiency

---

[1](...continued)
rounded to the nearest dollar.

[2] Respondent concedes that petitioners qualify for an education credit for 2001. However, the amount of the education credit that they are entitled to depends on their adjusted gross income.

determination, and in each case the U.S. Court of Appeals has affirmed the decision of this Court. See <u>Arevalo v. Commissioner</u>, <u>supra</u>; <u>Crooks v. Commissioner</u>, <u>supra</u>. In short, this Court and the Courts of Appeals have consistently held that a taxpayer's investment in an arrangement involving pay phones marketed by Alpha Telcom, Inc. (Alpha Telcom), and its wholly owned subsidiary American Telecommunications Co., Inc. (ATC), did not support either: (1) A depreciation deduction under section 167 because the taxpayer did not have the requisite benefits and burdens of ownership to support a depreciable interest in the pay phones; or (2) a disabled access credit under section 44, because the investment was not an eligible access expenditure.

B.  <u>Background</u>

Alpha Telcom marketed a pay phone investment program through ATC to thousands of investors nationwide. Alpha Telcom represented that the pay phones included modifications such as longer cords, volume controls, and/or other features that facilitated their use by persons with disabilities. Alpha Telcom also represented to investors that the modifications made to the pay phones complied with the requirements of the Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, 104 Stat. 327.

On June 2, 2001, petitioners entered into separate contracts with ATC entitled "Telephone Equipment Purchase Agreement" (ATC pay phone agreements) to purchase a total of seven pay phones at

a cost of $5,000 per pay phone. Pursuant to the ATC pay phone agreements, petitioners paid $35,000 to ATC, and ATC purportedly provided petitioners with legal title to the "telephone equipment" which was described in an attachment to the ATC pay phone agreements, entitled "Telephone Equipment List". However, the attachment did not identify the pay phones subject to the agreement, the prices, or the locations. Furthermore, petitioners were not provided with a list of the modifications that were made to the pay phones they purchased, and they did not know the cost of these modifications.

The ATC pay phone agreements also provided a "Buy Back Election" which was valid for 7 years. Under its terms, Alpha Telcom had the right of first refusal in the event petitioners were to sell a pay phone. The buy back election also provided that if petitioners elected to sell a pay phone back to ATC within 36 months of the date of delivery, they would be refunded the entire purchase price minus a 10-percent restocking fee. If the buy back election was made after 36 months, they would be refunded the entire purchase price without a restocking fee.

On June 2, 2001, each petitioner also entered into a separate "Telephone Services Agreement" with Alpha Telcom (Alpha Telcom service agreements) with a term of 3 years. Under its terms, Alpha Telcom was responsible for selecting the location of the pay phones, negotiating site agreements with the owners or

lessees of the premises where the pay phones were to be installed, installing the pay phones, obtaining all licenses needed to operate the pay phones, insuring and maintaining the pay phones, collecting and accounting for the revenues generated by the pay phones, and paying vendor commissions and fees.

In return, Alpha Telcom was entitled to 70 percent of the revenues the pay phones generated, while petitioners were entitled to the balance. In the event that a pay phone's adjusted gross revenue was less than $194.50 for the month, the Alpha Telcom service agreements provided that Alpha Telcom would waive or reduce the 70-percent fee and pay petitioners at least $58.34, so long as the equipment generated at least that amount. In the event that a pay phone's adjusted gross revenue was less than $58.34 for the month, petitioners would receive 100 percent of the adjusted gross revenue. Notwithstanding this formula, Alpha Telcom made it a practice to pay its investors $58.34 per pay phone, regardless of the revenue actually received. Petitioners' pay phones were never installed, and they never received a monthly return because Alpha Telcom filed for bankruptcy shortly after petitioners entered into the ATC pay phone agreements. Petitioners never saw or took possession of the pay phones.

On August 24, 2001, Alpha Telcom filed for bankruptcy under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court

for the Southern District of Florida.  The matter was transferred to the U.S. Bankruptcy Court for the District of Oregon on September 17, 2001.  On March 12, 2002, petitioners each filed a proof of claim with the bankruptcy court for a total of $39,492.[3]  Petitioner did not receive any money from Alpha Telcom or ATC or the pay phones they purchased.

C.  Claimed Deductions and Credits

On April 12, 2002, petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for 2001, to which they attached a Schedule C, Profit or Loss From Business, claiming a depreciation deduction of $2,143 with respect to the seven pay phones.  Petitioners also attached to the 2001 return a Form 8826, Disabled Access Credit, claiming a $5,000 tax credit with respect to the seven pay phones.

On April 12, 2003, petitioners filed a joint Form 1040 for 2002, to which they attached a Schedule C claiming an expense deduction of $14,000 on line 27 as an "Other" expense.  In the

---

[3] The bankruptcy matter was dismissed on Sept. 10, 2003, by motion of Alpha Telcom.  The bankruptcy court held that it was in the best interest of creditors and the estate to dismiss the bankruptcy matter so that proceedings could continue in Federal District Court, where there was a pending receivership involving debtors.

The Securities and Exchange Commission (SEC) brought a civil suit against Alpha Telcom in 2001 in the U.S. District Court for the District of Oregon.  On Feb. 7, 2002, the District Court held that the pay phone scheme was actually a security investment, and Alpha Telcom had violated Federal law because it did not register the program with the SEC.  SEC v. Alpha Telcom, Inc., 187 F. Supp. 2d 1250 (D. Or. 2002), affd. 350 F.3d 1084 (9th Cir. 2003).

explanation section for the "Other" expense, petitioners stated the $14,000 was for a "payout of phone equipment".

Thell Prueitt, a representative of Alpha Telcom, helped petitioners prepare the 2001 and 2002 returns.

Respondent issued a notice of deficiency on March 3, 2005, disallowing the Schedule C deductions for 2001 and 2002 and the Form 8826 credit for 2001. Petitioners timely filed their petition on June 1, 2005.

## OPINION

## I. Burden of Proof

Under section 7491, the burden of proof shifts from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability. Sec. 7491(a)(1). However, section 7491(a)(1) applies with respect to an issue only if the taxpayer has complied with the requirements to substantiate any item, has maintained all records, and has cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. See sec. 7491(a)(2)(A) and (B).

Although petitioners claimed that section 7491(a) applies, they failed to introduce sufficient evidence to shift the burden to respondent. Nonetheless, our findings in this case are based

on a preponderance of the evidence.  See <u>Arevalo v. Commissioner</u>, 124 T.C. at 250-251.

## II.  <u>Depreciation Deduction</u>

Section 167(a) allows as a depreciation deduction a reasonable allowance for the "exhaustion, wear and tear" of property (1) used in a trade or business or (2) held for the production of income.

Depreciation deductions are based on investment in and actual ownership of property rather than on possession of bare legal title.  See <u>Arevalo v. Commissioner</u>, 124 T.C. at 251; <u>Grant Creek Water Works, Ltd. v. Commissioner</u>, 91 T.C. 322, 326 (1988); <u>Narver v. Commissioner</u>, 75 T.C. 53, 98 (1980), affd. 670 F.2d 855 (9th Cir. 1982).  The transfer of formal legal title does not shift the incidence of taxation attributable to ownership of property where the transferor continues to retain significant control over the property transferred.  <u>Arevalo v. Commissioner</u>, 469 F.3d at 439; <u>Crooks v. Commissioner</u>, 453 F.3d at 656; see also <u>Frank Lyon Co. v. United States</u>, 435 U.S. 561, 572-573 (1978); <u>Grodt & McKay Realty, Inc. v. Commissioner</u>, 77 T.C. 1221, 1236 (1981).

If the benefits and burdens reflecting ownership have not passed from "seller" to "purchaser", the transfer of formal legal title is disregarded when determining ownership of an asset for purposes of depreciation.  See <u>Arevalo v. Commissioner</u>, 469 F.3d

at 439. Whether the benefits and burdens of ownership with respect to property have passed to the taxpayer is a question of fact that must be ascertained from the intention of the parties as established by the written agreements read in the light of the attending facts and circumstances. See Arevalo v. Commissioner, 124 T.C. at 251-252; Grodt & McKay Realty, Inc. v. Commissioner, supra at 1237.

The denial of depreciation deductions in the Alpha Telcom cases has been supported by the examination of six factors: (1) Whether legal title passes; (2) the manner in which the parties treat the transaction; (3) whether the purchaser acquired any equity in the property; (4) whether the purchaser has any control over the property, and, if so, the extent of such control; (5) whether the purchaser bears the risk of loss or damage to the property; and (6) whether the purchaser will receive any benefit from the operation and disposition of the property. Arevalo v. Commissioner, 469 F.3d at 439-440; Crooks v. Commissioner, supra at 656; Arevalo v. Commissioner, 124 T.C. at 252.

If we consider the terms of the ATC pay phone agreements and the Alpha Telcom service agreements together, Alpha Telcom was responsible for selecting the locations of the pay phones, negotiating site agreements with the owners or lessees of the premises where the pay phones were to be installed, installing

the pay phones, obtaining all licenses needed to operate the pay phones, insuring and maintaining the pay phones, collecting and accounting for the revenues generated by the pay phones, and paying vendor commissions and fees. Petitioners never saw or possessed the pay phones or knew where they were to be installed. Furthermore, Alpha Telcom was entitled to receive most of the profit, and it bore the risk of loss if the pay phones did not generate sufficient revenue. Regardless of the revenues actually generated, petitioners were guaranteed to be paid at least $58.34 per month per pay phone. See Arevalo v. Commissioner, 124 T.C. at 247, 253. In addition, the ATC pay phone agreements allowed petitioners to sell the pay phones back to ATC for a fixed formula price.

For the foregoing reasons, the Court finds that petitioners did not receive the benefits and burdens of ownership with respect to the seven pay phones. Therefore, they are not entitled to a depreciation deduction of $2,143 under section 167 for 2001. See Arevalo v. Commissioner, 124 T.C. at 253.

III. <u>Disabled Access Credits</u>

For purposes of the general business credit under section 38, section 44(a) provides a disabled access credit for certain small businesses.  The amount of this credit is equal to 50 percent of the "eligible access expenditures" of an "eligible small business" that exceed $250 but that do not exceed $10,250 for the year.  Sec. 44(a).

In order to claim the disabled access credit, a taxpayer must demonstrate:  (1) The taxpayer is an "eligible small business" for the year in which the credit is claimed and (2) the taxpayer has made "eligible access expenditures" during that year.  If the taxpayer cannot fulfill both of these requirements, the taxpayer is not eligible to claim the credit for that year.

For purposes of section 44, the term "eligible small business" means any person who (1) had gross receipts of no more than $1 million for the preceding year or not more than 30 full-time employees during the preceding year and (2) elects the application of section 44 for the year.  Sec. 44(b). The term "eligible access expenditures" means amounts paid or incurred by an eligible small business to enable the eligible small business to comply with the requirements under the ADA.[4]  Sec. 44(c)(1).

_____

[4] Such expenditures include amounts paid or incurred:  (1) To remove architectural, communication, physical, or
                                        (continued...)

As relevant here, the requirements set forth in the ADA apply to: (1) Persons who own, lease, lease to, or operate certain places of "public accommodation"; and (2) any "common carrier" of telephone voice transmission services. See 42 U.S.C. sec. 12182(a) (2000); see also 47 U.S.C. sec. 225(c) (2000). A person who does not have an obligation to comply with the requirements set forth in the ADA could never make an eligible access expenditure. Arevalo v. Commissioner, 124 T.C. at 255.

As in the Alpha Telcom cases, petitioners neither owned, leased, leased to, or operated a public accommodation during 2001, nor were they a "common carrier" of telephone voice transmission services during 2001. See Arevalo v. Commissioner, 469 F.3d at 440-441; Crooks v. Commissioner, 453 F.3d at 657; Arevalo v. Commissioner, 124 T.C. at 255-256. Accordingly, the Court finds that petitioners were not obligated to comply with

---

[4](...continued)
transportation barriers that prevent a business from being accessible to, or usable by, individuals with disabilities; (2) to provide qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments; (3) to acquire or modify equipment or devices for individuals with disabilities; or (4) to provide other similar services, modifications, materials, or equipment. See sec. 44(c)(2). Eligible access expenditures do not include expenditures that are unnecessary to accomplish such purposes. See sec. 44(c)(3). Additionally, eligible access expenditures do not include amounts that are paid or incurred to remove architectural, communication, physical, or transportation barriers that prevent a business from being accessible to, or usable by, individuals with disabilities with respect to any facility first placed in service after Nov. 5, 1990. See sec. 44(c)(4).

the requirements set forth in the ADA during 2001.  See <u>Arevalo</u> <u>v. Commissioner</u>, 124 T.C. at 255-256.  Therefore, petitioners are not entitled to claim the disabled access credit under section 44 for their investment in the pay phones in 2001.  See <u>id.</u> at 257-258.

IV.  <u>Expense Deduction</u>

Respondent contends that petitioners were not entitled to the $14,000 expense deduction under section 162(a) in 2002 because they failed to establish that they paid or incurred any expenses with respect to a pay phone trade or business in 2002.

Under section 162(a), a taxpayer may deduct ordinary and necessary business expenses incurred or paid during the taxable year.  The taxpayer is required to maintain records sufficient to enable the Commissioner to determine his correct tax liability.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  The taxpayer has the burden to prove the Commissioner's determination was incorrect.  Rule 142(a).

Petitioners produced no evidence to indicate that they paid or incurred $14,000 of business expenses with respect to their pay phone business in 2002.  On this record, the Court finds that petitioners are not entitled to deduct the $14,000 as a business expense under section 162(a) in 2002.

Petitioners also testified that the $14,000 was not an expense deduction but a depreciation deduction and they should

have claimed $24,750, instead of $14,000, which was the remainder of the cost of the seven pay phones.  However, as the Court found above, petitioners did not receive the benefits and burdens of ownership with respect to the seven pay phones.  Therefore, petitioners are not entitled to a depreciation deduction for any amount under section 167 with respect to the seven pay phones in 2002.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.