T.C. Memo. 2009-98

UNITED STATES TAX COURT

MATTHEW P. LOVELAND AND KELLIE J. LOVELAND-MAGNUSON, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17980-05.                    Filed May 14, 2009.

Matthew P. Loveland and Kellie J. Loveland-Magnuson, pro sese.

<u>Catherine S. Tyson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies with respect to petitioners' Federal income tax of $13,310.40 for 2000, $3,750 for 2001, and $2,418 for 2002.  The issues for decision are:  (1) Whether petitioners are entitled to certain deductions relating to a pay phone activity reported on their

Schedules C, Profit or Loss From Business, of their Forms 1040, U.S. Individual Income Tax Return, for 2000 and 2001; (2) whether petitioners are entitled to certain deductions reported on their Schedule C relating to a Mary Kay cosmetics activity for 2002; (3) whether certain income reported on petitioners' 2000 and 2002 Schedules C should be reclassified as other income; and (4) whether petitioners are entitled to carry forward and claim in 2002 a disability access credit under section 44.[1]

### FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate in our findings by this reference. Petitioners resided in Missouri when the petition was filed.[2]

Background

In 1999 Kellie J. Loveland-Magnuson (Ms. Magnuson) inherited from her father, Thomas Doherty (Mr. Doherty), an interest in an Alpha Telcom, Inc. (Alpha Telcom), program involving pay phones. After receiving proceeds from the Alpha Telcom pay phones, Ms. Magnuson requested information about the pay phones from Owen Snyder (Mr. Snyder), Mr. Doherty's and petitioners' income tax preparer, and Mr. Snyder answered her questions about the pay

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

[2]At the time of trial, petitioners were divorced, and petitioner Kellie J. Loveland-Magnuson was remarried.

phones.  Ms. Magnuson decided to invest in additional Alpha Telcom pay phones.

On August 9, 1999, Ms. Magnuson entered into an agreement with Alpha Telcom entitled "Telephone Equipment Purchase Agreement" (purchase agreement) to purchase[3] three additional pay phones for $5,000 each, and she remitted a $15,000 payment to Alpha Telcom.  Alpha Telcom or ATC, Inc., Alpha Telcom's subsidiary, was responsible for finding sites for and installing the pay phones.  The purchase agreement included an attachment entitled "Telephone Equipment List"; but when Ms. Manguson signed the agreement, the attachment did not identify the pay phones she was purchasing.  The purchase agreement stated that the "Phones have approved installation under The [Americans] with Disabilities Act."

On the same day, Ms. Magnuson entered into a 3-year "Telephone Services Agreement" with Alpha Telcom (services agreement).  Under the services agreement, Alpha Telcom was responsible for collecting monthly revenue generated by the pay phones, paying commissions and fees to vendors, repairing and maintaining the pay phones, and making necessary capital improvements.  In exchange, Alpha Telcom was entitled to 70 percent of the monthly adjusted gross revenue from the pay

---

[3]We use the term "purchase" to mean that Ms. Magnuson acquired an interest in the pay phones, but our use of the term does not mean that Ms. Magnuson acquired a depreciable interest.

phones.  However, if the monthly adjusted gross revenue did not exceed $58.34, Ms. Magnuson would be entitled to all of the adjusted gross revenue and would owe Alpha Telcom no monthly fee. In addition, Alpha Telcom promised to pay Ms. Magnuson a monthly base amount of at least $58.34 per pay phone.

The services agreement included an attachment entitled "Buy Back Election" wherein Alpha Telcom agreed to buy back the pay phones for a fixed price stated in the agreement.  After 36 months Alpha Telcom would buy back any pay phone for the full purchase price.

On August 24, 2001, Alpha Telcom filed for bankruptcy under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Florida.  See Arevalo v. Commissioner, 124 T.C. 244, 249 (2005), affd. 469 F.3d 436 (5th Cir. 2006).  The case was later transferred to the U.S. Bankruptcy Court for the District of Oregon.  Id.  On September 10, 2003, the bankruptcy case was dismissed pursuant to a motion of Alpha Telcom.  Id.  The bankruptcy court held that it was "'in the best interest of creditors and the estate to dismiss so that proceedings could continue in federal district court, where there was a pending receivership involving debtors.'"  Id.  Ms. Magnuson did not take possession of the pay phones after the bankruptcy, and she does not know what happened to them.

In 2001 the Securities and Exchange Commission (SEC) brought a civil enforcement action against Alpha Telcom in the U.S. District Court for the District of Oregon.  Id.  The District Court held that the Alpha Telcom pay phone program investment contract was actually a security and that Alpha Telcom violated Federal law by not registering the program with the SEC.  Id.; SEC v. Alpha Telcom, Inc., 187 F. Supp. 2d 1250 (D. Or. 2002), affd. 350 F.3d 1084 (9th Cir. 2003).

Federal Income Tax Reporting

For 1999 petitioners filed a Form 1040 that included a Form 8826, Disabled Access Credit, reporting a current year disabled access credit of $5,000.  The disabled access credit related to Ms. Magnuson's purchase of the three additional Alpha Telcom pay phones in 1999.  However, petitioners did not use the credit to offset any part of their 1999 Federal income tax liability.

For 2000 petitioners filed a Form 1040 that included a Schedule C relating to Ms. Magnuson's Alpha Telcom pay phone activity.  On the 2000 Schedule C petitioners reported gross receipts or sales of $19,604, a $42,240 depreciation deduction, and a $1,200 legal and professional fees deduction.  Petitioners also attached to their 2000 return a Form 3800, General Business Credit, showing a $2,290 general business credit carryforward of the 1999 disabled access credit, but they did not use the credit

carryforward to offset any part of their 2000 Federal income tax liability.

For 2001 petitioners filed a Form 1040 that included a Schedule C for the Alpha Telcom pay phone activity. On the 2001 Schedule C petitioners reported no gross receipts, but they claimed deductions for depreciation ($25,344) and legal and professional services ($100). Petitioners also attached to their 2001 Form 1040 a Form 3800 showing a $2,290 general business credit carryforward of the 1999 disabled access credit, but they did not use the credit carryforward to offset any part of their 2001 Federal income tax liability.

For 2002 petitioners filed a Form 1040 that included a Schedule C for a Mary Kay cosmetics activity. On the 2002 Schedule C petitioners reported income of $214, cost of goods sold of $800, and car and truck expenses of $18. Petitioners also attached a Form 3800 showing a $2,290 general business credit carryforward of 1999 disabled access credit, which they used to offset their 2002 Federal income tax liability.[4]

On July 29, 2005, respondent sent petitioners a notice of deficiency for 2000-02. Respondent determined: (1) Petitioners were not entitled to depreciation deductions claimed on their 2000 and 2001 Schedules C; (2) petitioners were not entitled to a

---

[4]The $2,710 balance of the $5,000 disabled access credit reported in 1999 was carried back and used to offset petitioners' 1998 Federal income tax liability.

deduction for legal and professional services claimed on their 2000 Schedule C; (3) petitioners were not entitled to cost of goods sold and deductions for car and truck expenses claimed on their 2002 Schedule C; (4) the gross receipts reported on petitioners' 2000 and 2002 Schedules C should be reported as other income on their Forms 1040; and (5) petitioners were not entitled to the disabled access credit carryforward claimed on their 2002 Form 1040.[5]  Petitioners filed a petition contesting respondent's determinations.

## OPINION

### I.  Depreciation Deductions

Section 167(a) generally allows a depreciation deduction for the exhaustion and wear and tear of property used in a trade or business or property held for the production of income. Depreciation deductions are based on an investment in and actual ownership of property rather than on possession of bare legal title.  Arevalo v. Commissioner, 124 T.C. 244, 251 (2005), affd. 469 F.3d 436 (5th Cir. 2006).[6]  It is well established that the

---

[5]Respondent also made a computational adjustment to petitioners' child tax credits for 2000 and 2001.

[6]In their brief, petitioners repeatedly argue that we stated during trial that in deciding this case we would not rely on Arevalo v. Commissioner, 124 T.C. 244 (2005), affd. 469 F.3d 436 (5th Cir. 2006), and Crooks v. Commissioner, 453 F.3d 653 (6th Cir. 2006).  Petitioners are mistaken.  At trial we simply stated that respondent's pretrial memorandum was not evidence in this case.  We did not indicate that we would refrain from relying on
(continued...)

mere transfer of legal title does not transfer the incidents of taxation attributable to property ownership where the transferor retains significant control over the property. See <u>Crooks v. Commissioner</u>, 453 F.3d 653, 656 (6th Cir. 2006); <u>Arevalo v. Commissioner</u>, <u>supra</u> at 251; see also <u>Frank Lyon Co. v. United States</u>, 435 U.S. 561, 572-573 (1978).

A taxpayer is entitled to depreciation deductions with respect to property only if the benefits and burdens of owning the property have passed to the taxpayer. <u>Arevalo v. Commissioner</u>, <u>supra</u> at 251. Whether the taxpayer has received the benefits and burdens of ownership is a question of fact that must be determined from the parties' intent as established by written agreements read in the light of the attending facts and circumstances. <u>Id.</u> at 251-252; <u>Grodt & McKay Realty, Inc. v. Commissioner</u>, 77 T.C. 1221, 1237 (1981). This Court and several Courts of Appeals have held that taxpayers who invested in Alpha Telcom pay phones did not receive the benefits and burdens of owning the pay phones required for them to claim depreciation deductions under section 167. <u>Crooks v. Commissioner</u>, <u>supra</u> at 656; <u>Arevalo v. Commissioner</u>, <u>supra</u> at 253; <u>Sita v. Commissioner</u>, T.C. Memo. 2007-363, affd. without published opinion 103 AFTR 2d 2009-1174, 2009-1 USTC par. 50,275 (7th Cir. 2009).

_____

[6](...continued)
relevant cases in our opinion.

In Arevalo v. Commissioner, supra at 252, we identified eight factors for determining whether a taxpayer, like Ms. Magnuson, who invested in Alpha Telcom pay phones held the burdens and benefits of owning the pay phones. Those factors include: (1) Whether legal title passes; (2) how the parties treat the transaction; (3) whether an equity was acquired in the property; (4) whether the contract creates a present obligation on the seller to execute and deliver a deed and a present obligation on the purchaser to make payments; (5) whether the right of possession is vested in the purchaser; (6) which party pays the property taxes; (7) which party bears the risk of loss or damage to the property; and (8) which party receives the profits from the operation and sale of the property.

After analyzing the purchase and services agreements entered into by Ms. Magnuson and the facts and circumstances of this case, we conclude that the factors weigh against Ms. Magnuson. Ms. Magnuson received only bare legal title to the pay phones. She never took possession of the pay phones that she purchased, nor could she identify the location of her pay phones.[7] Alpha Telcom controlled the location of and entered into site

---

[7]At trial she testified only that she once saw a photograph of one of her pay phones. She also testified that she saw some pay phones in a mall in Sawgrass Mills, Florida, but that they were not her pay phones. After Alpha Telcom filed for bankruptcy, Ms. Magnuson did not take possession of the pay phones, and she could not explain what happened to them.

agreements for the pay phones, collected monthly revenue, paid vendor commissions and fees, and repaired and maintained the pay phones. Alpha Telcom was entitled to 70 percent of the monthly profits from the pay phones as long as the monthly profits exceeded $58.34. The record does not show that Ms. Magnuson paid any property taxes, insurance premiums, or license fees with respect to the pay phones. Moreover, Ms. Magnuson bore no risk of loss for the pay phones. Under the buyback provision, Alpha Telcom agreed to repurchase any pay phone, regardless of condition or value, for a fixed price stated in the services agreement.

After a review of the facts and circumstances, we conclude that Ms. Magnuson never received the benefits and burdens of ownership with respect to the pay phones. Therefore, we sustain respondent's determination disallowing petitioners' 2000 and 2001 depreciation deductions.[8]

II. Legal and Professional Services

In addition to the depreciation deductions, petitioners also claimed a deduction for legal and professional services on their

---

[8]Petitioners claimed a $25,344 depreciation deduction on their 2001 Schedule C, but respondent disallowed only $25,000 of the deduction in the notice of deficiency. Although respondent's decision to allow $344 of the depreciation deduction appears to be inconsistent with his position that petitioners were not engaged in a trade or business during 2001, we address petitioners' depreciation deduction only to the extent disallowed by respondent.

2000 Schedule C relating to the pay phone activity.  In the notice of deficiency, respondent disallowed that deduction on the grounds that it was not an ordinary and necessary business expense and that no deduction is allowed for any personal, family, or living expenses.[9]

Section 162(a) authorizes a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  To be engaged in a trade or business with respect to which deductions are allowable under section 162, the taxpayer must be involved in the activity with continuity and regularity, and the taxpayer's primary purpose for engaging in the activity must be for income or profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

As we have already stated, Ms. Magnuson never received the benefits and burdens of ownership with respect to the pay phones that would entitle her to the incidents of taxation attributable to their ownership.  Because Ms. Magnuson never had more than

---

[9]In the notice of deficiency respondent also disallowed the cost of goods sold and car and truck expenses reported on petitioners' 2002 Schedule C relating to the Mary Kay cosmetics activity.  In addition respondent determined that the $214 business income reported on the Schedule C for the Mary Kay cosmetics activity should be reclassified as other income on petitioners' Form 1040.  Petitioners did not introduce any evidence at trial or make any arguments in their posttrial briefs regarding the 2002 Mary Kay cosmetics activity.  Consequently, we conclude that petitioners have conceded respondent's determination with respect to the Mary Kay cosmetics activity in 2002.

bare legal title and did not conduct any business involving the pay phones, we conclude that she was not in the trade or business of owning and operating pay phones. Consequently, petitioners are not entitled to claim deductions under section 162(a) with respect to the pay phone activity. We sustain respondent's determination disallowing the deduction for legal and professional services claimed on petitioners' 2000 Schedule C.

III. Gross Receipts From the Pay Phone Activity

Respondent argues that the $19,604 of gross receipts or sales from the pay phone activity reported on petitioners' 2000 Schedule C should be reclassified as other income on petitioners' Form 1040 because petitioners were not engaged in a trade or business. We agree. As we have already stated above, Ms. Magnuson's pay phone activity was not a trade or business. Thus, the gross receipts from the pay phone activity should properly be classified as miscellaneous items of gross income and should be reported as other income on petitioners' Form 1040. See sec. 1.61-14, Income Tax Regs.[10]

IV. Disabled Access Credit

For purposes of the general business credit under section 38, section 44(a) provides a disabled access credit for certain small businesses. The amount of the credit is equal to 50

---

[10]Respondent determined accordingly that the gross receipts or sales reported on the 2000 Schedule C should be decreased by $19,604, and we so find.

percent of the "eligible access expenditures" of an "eligible small business" that exceed $250 but that do not exceed $10,250 for the year. Sec. 44(a). To claim the credit, a taxpayer must show that (1) the taxpayer is an "eligible small business" during the year, and (2) the taxpayer has made "eligible access expenditures" during the year.

The term "eligible small business" means a taxpayer who elects the application of section 44 and had gross receipts of no more than $1 million or no more than 30 full-time employees during the preceding year. Sec. 44(b). The term "eligible access expenditures" means amounts paid or incurred to enable an eligible small business to comply with the requirements under the ADA.[11] Sec. 44(c)(1). Only a taxpayer who has an obligation to comply with the ADA requirements can make an eligible access expenditure. As relevant here, the ADA requirements apply to (1) persons who own, lease, lease to, or operate certain "public accommodations" and (2) "common carriers" of telephone voice

---

[11]Eligible access expenditures include amounts paid or incurred: (1) For removing architectural, communication, physical, or transportation barriers that prevent a business from being accessible to, or usable by, individuals with disabilities; (2) to provide qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments; (3) to acquire or modify equipment or devices for individuals with hearing impairments; or (4) to provide other similar services, modifications, materials, or equipment. Sec. 44(c)(2). However, eligible access expenditures do not include expenditures that are not necessary to accomplish such purposes. See sec. 44(c)(3).

transmission services.  See 42 U.S.C. sec. 12182(a) (2006); 47 U.S.C. sec. 225(c) (2006).

This Court and several Courts of Appeals have held that taxpayers who invested in Alpha Telcom pay phones did not have an obligation to comply with the requirements set forth in the ADA. <u>Crooks v. Commissioner</u>, 453 F.3d at 657; <u>Arevalo v. Commissioner</u>, 124 T.C. at 257-258; <u>Sita v. Commissioner</u>, T.C. Memo. 2007-363. This case is no different.  Ms. Magnuson did not own, lease, lease to, or operate a public accommodation during 1999, nor was she a common carrier of telephone voice transmission services during 1999.[12]  Therefore, Ms. Magnuson was not obligated to comply with the ADA requirements and did not make any eligible access expenditures in 1999.[13]  We conclude that petitioners are not entitled to claim the disabled access credit carryforward in 2002 for the purchase of the pay phones in 1999.

We have considered all arguments raised by the parties, and to the extent not discussed, we find them to be irrelevant, moot, or without merit.

---

[12]Although the taxable year 1999 is not before us, we may nevertheless consider facts with relation to the taxes for other years as may be necessary to redetermine the correct amount of the deficiency for the years at issue.  See sec. 6214(b).

[13]Petitioners cite <u>Hubbard v. Commissioner</u>, T.C. Memo. 2003-245, in support of their argument that they are entitled to a disabled access credit for the pay phones.  However, <u>Hubbard</u> is distinguishable from this case.  In <u>Hubbard</u>, unlike here, the taxpayers maintained a place of public accommodation and thus were required to comply with the ADA.

To reflect the foregoing,

Decision will be entered

<u>for</u> <u>respondent</u>.