# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2404

_____

Matthew P. Loveland; Kellie J.     *
Loveland-Magnuson,     *
   *
       Appellants,     *
   *    Appeal from the United States
     v.     *    Tax Court.
   *
Commissioner of Internal Revenue,     *    [UNPUBLISHED]
   *
       Appellee.     *

_____

Submitted: April 6, 2010
Filed: May 4, 2010

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

PER CURIAM

In this pro se appeal, Matthew Loveland and Kellie Loveland-Magnuson (taxpayers) challenge the tax court's[1] decision disallowing depreciation deductions under 26 U.S.C. § 167, business-related deductions under 26 U.S.C. § 162, and disabled-access credit under 26 U.S.C. § 44.[2] The deductions and the credit arose

_____

[1]The Honorable L. Paige Marvel, United States Tax Court Judge.

[2]The Commissioner also denied taxpayers deductions relating to a cosmetics business, but the tax court concluded correctly that taxpayers conceded the issue by

from Loveland-Magnuson's inheritance from her father of payphones that he had bought from Alpha Telcom, Inc. (Alpha) and her later purchase of additional payphones from Alpha. The payphones were equipped with modifications that purportedly rendered them compliant with the Americans With Disabilities Act ("ADA"). We review the tax court's findings of fact for clear error and its legal conclusions de novo. See Campbell v. Comm'r, 164 F.3d 1140, 1142 (8th Cir. 1999).

We agree with the tax court that taxpayers were not eligible for the depreciation deductions, because Alpha retained so much control over the payphones under its purchase and service agreements that Loveland-Magnuson never acquired ownership of the equipment for purposes of the Tax Code. See Upham v. Comm'r, 923 F.2d 1328, 1334 (8th Cir. 1991) ("[W]here the transferor continues to retain significant control over the property transferred, the transfer of formal legal title will not operate to shift the incidence of taxation attributable to ownership of the property.") Alpha chose the location where the payphones were to be installed and entered into site agreements; performed installation, maintenance, and repairs; collected revenues; and paid insurance and other fees. Alpha also agreed to buy back the payphones and retained a majority of the profits. See id. (discussing factors to consider in determining ownership); Arevalo v. Comm'r, 469 F.3d 436 (5th Cir. 2006) (applying Upham to affirm disallowance of § 167 depreciation deduction taken by taxpayers who bought payphones from Alpha); Crooks v. Comm'r, 453 F.3d 653 (6th Cir. 2006) (same); see also Sita v. Comm'r, 313 Fed. Appx. 885 (7th Cir. 2009) (unpublished per curiam) (same).

We also agree with the tax court that taxpayers were not eligible for the disabled-access tax credit, because the credit applies only to qualified expenditures made for the purpose of complying with the ADA, and taxpayers were not required to comply with the ADA. See Crooks, 453 F.3d at 657 (taxpayer-investors did not

not presenting evidence or argument below regarding the deductions.

have duty to ensure phones were ADA-compliant because they were not owners, lessors, lessees, or operators of places of public accommodation; payphone investment did not qualify for disabled-access credit); <u>Arevalo</u>, 469 F.3d at 440 (same); <u>Sita</u>, 313 Fed. Appx. at 886 (same).

Finally, we agree with the tax court that taxpayers were not engaged in a trade or business involving the payphones, and therefore were not entitled to deductions under section 162 for expenses relating to a trade or business. <u>See</u> <u>Comm'r v. Groetzinger</u>, 480 U.S. 23, 35 (1987) (to be engaged in a trade or business, taxpayer must be involved in activity with continuity and regularity).

Accordingly, we affirm.

_____