# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2407

_____

| | | |
|---|---|---|
| Kevin T. Doherty, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | Tax Court. |
| | * | |
| Commissioner of Internal Revenue, | * | [UNPUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: April 6, 2010
Filed: May 4, 2010

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

In this pro se appeal, Kevin Doherty challenges the tax court's[1] decision disallowing depreciation deductions under 26 U.S.C. § 167, business-related deductions under 26 U.S.C. § 162, and disabled-access credit under 26 U.S.C. § 44. The deductions and the credit arose from Doherty's investment in payphones that he inherited and that he later purchased himself from Alpha Telecom, Inc. (Alpha), and from his investment in automated teller machines (ATMs) that he purchased from National Equipment Providers, LLC (NEP). The payphones and ATMs were purportedly equipped with modifications that rendered them compliant with the

_____

[1]The Honorable L. Paige Marvel, United States Tax Court Judge.

Americans With Disabilities Act (ADA). We review the tax court's findings of fact for clear error and its legal conclusions de novo. See Campbell v. Comm'r, 164 F.3d 1140, 1142 (8th Cir. 1999).

We agree with the tax court that Doherty was not eligible to take depreciation deductions for either the payphones or the ATMs, because under his purchase and service agreements with Alpha and with NEP's service provider, both companies retained so much control over the equipment that Doherty never acquired ownership of it for purposes of the Tax Code. See Upham v. Comm'r, 923 F.2d 1328, 1334 (8th Cir. 1991) ("[W]here the transferor continues to retain significant control over the property transferred, the transfer of formal legal title will not operate to shift the incidence of taxation attributable to ownership of the property.") Specifically, Alpha and NEP's service provider chose the location where the equipment was to be installed and entered into site agreements; performed installation, maintenance, and repairs; collected revenues; and paid insurance and other fees. Further, the companies agreed to buy back their equipment and retained a majority of the profits from the payphone and ATM revenues. See id. (discussing factors to consider in determining ownership); Arevalo v. Comm'r, 469 F.3d 436 (5th Cir. 2006) (applying Upham to affirm disallowance of § 167 depreciation deduction taken by taxpayers who bought payphones from Alpha); Crooks v. Comm'r, 453 F.3d 653 (6th Cir. 2006) (same); see also Sita v. Comm'r, 313 Fed. Appx. 885 (7th Cir. 2009) (unpublished per curiam) (same).

We also agree with the tax court that Doherty was not eligible for the disabled-access tax credit, because the credit applies only to qualified expenditures made for the purpose of complying with the ADA, and Doherty was not required to comply with the ADA. See Crooks, 453 F.3d at 657 (taxpayer-investors did not have duty to ensure phones were ADA-compliant because they were not owners, lessors, lessees, or operators of places of public accommodation; payphone investment did not qualify

for disabled-access credit); <u>Arevalo</u>, 469 F.3d at 440 (same); <u>Sita</u>, 313 Fed. Appx. at 886 (same).

Finally, we agree with the tax court that Doherty was not engaged in a trade or business involving the payphones or the ATMs, and therefore was not entitled to deductions under section 162 for expenses relating to a trade or business. <u>See</u> <u>Comm'r v. Groetzinger</u>, 480 U.S. 23, 35 (1987) (to be engaged in a trade or business, taxpayer must be involved in activity with continuity and regularity).

Accordingly, we affirm.

_____